## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 18-CR-2002-CJW-MAR |
| vs. | |
| XIOMARA GONZALEZ ZAMBRANO, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

## *I.     INTRODUCTION*

This matter is before the Court on defendant's amended motion for compassionate release filed on January 12, 2021. (Doc. 203). On January 14, 2021, the government timely filed a resistance. (Doc. 204). Defendant did not file a reply. For the following reasons, the Court **denies** defendant's motion.

## *II.     RELEVANT BACKGROUND*

From approximately November 2017 through at least January 2018, defendant was involved in a sophisticated and widespread conspiracy to distribute large quantities of methamphetamine in Iowa. (Doc. 112, at 4–6). On January 16, 2018, defendant was arrested when she arrived at a location designated by a confidential informant to deliver methamphetamine on behalf of her coconspirators. (*Id.*, at 6). Defendant's two youngest daughters, 11 and 17 years' old respectively, were also in her car. (*Id.*). Defendant was found in possession of 2,591 grams of methamphetamine. (*Id.*). Although defendant knew she was transporting drugs, she did not know the exact quantity. (*Id.*).

On February 8, 2018, a grand jury issued an Indictment charging defendant with conspiracy to distribute methamphetamine in violation of Title 21, United States Code,

Sections 841(a)(1), 841(b)(1)(A), and 851. (Doc. 7). On August 21, 2018, defendant pled guilty to this offense. (Doc. 67).

On November 8, 2018, the United States Probation Office filed defendant's final presentence investigation report. (Doc. 112). Defendant was 38 years old. (*Id.*, at 2). Defendant reported that she experienced physical and sexual abuse as a child. (*Id.*, at 9). Her father suffered from substances abuse issues and was murdered when defendant was 11 years old. (*Id.*). Defendant had good relationships with her mother and four brothers. (*Id.*). She did not complete high school and her work history was comprised of unverified farm, warehouse, and self-employment work. (*Id.*, at 11). Defendant had three daughters from three separate relationships, ages 21, 18, and 12 respectively. (*Id.*, at 10). Her younger two daughters were living with her cousin in California because the Iowa Department of Human Services placed them there after abuse was founded in relation to the instant offense. (*Id.*). Defendant had no criminal history aside from a conviction for driving while intoxicated. (*Id.*, at 8). Her medical records showed she had histories of hypertension and sleep apnea and saw a psychologist for mental health issues. (*Id.*, at 10). Defendant used methamphetamine daily and cocaine multiple times a week. (*Id.*, at 11). Defendant was referred to substance abuse treatment by her family in 2005 but left because she asserted the treatment was abusive. (*Id.*).

On February 27, 2019, the Court sentenced defendant. (Doc. 168). Defendant was in criminal history category I with a total offense level of 26, yielding an advisory guideline range of 63 to 78 months' imprisonment followed by two to five years on supervised release. (Doc. 112, at 14). Because defendant met the criteria under Title 18, United States Code, Sections 3553(f)(1)–(5), she was not subject to the otherwise applicable ten-year mandatory minimum term of incarceration. (*Id.*). The Court sentenced defendant to 63 months' imprisonment followed by five years on supervised release. (Doc. 168).

On October 23, 2020, defendant filed a pro se motion for compassionate release. (Doc. 196). After the Court appointed counsel to defendant (Doc. 198), she filed her amended motion for compassionate release now before the Court. (Doc. 203). Defendant is currently incarcerated at Phoenix FCI with a projected release date of November 27, 2021.[1]

### III.     COMPASSIONATE RELEASE STANDARDS

A court's ability to modify a sentence after it has been imposed is limited. Title 18, United States Code, Section 3582(c)(1)(A) allows a court to modify a sentence through "compassionate release." A defendant may directly petition the court for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the [Bureau of Prisons ("BOP")] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Although some courts disagree, this Court holds that defendants are not required to administratively appeal a warden's denial and may satisfy Section 3582(c)(1)(A) by waiting 30 days from the date the warden receives their request before filing a motion for compassionate release in the courts. *United States v. Burnside*, 467 F. Supp. 3d 659, 667 (N.D. Iowa 2020) (compiling cases).

The court may only reduce the defendant's sentence, however, after considering the factors set forth in Title 18, United States Code, Section 3553(a) to the extent they are applicable, and finding that:

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [Bureau of Prisons] that

---

[1] *Find an Inmate*, BOP, https://www.bop.gov/inmateloc/.

Case 6:18-cr-02002-CJW-MAR   Document 205   Filed 01/25/21   Page 3 of 10

the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). Defendants bear the burden of establishing eligibility for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

United States Sentencing Guidelines ("USSG") Section 1B1.13 defines "extraordinary and compelling reasons" as used in Section 3582(c)(1)(A)(i). Section 1B1.13 provides that such reasons exist when the defendant is (1) suffering from a terminal illness; (2) suffering from a serious physical or medical condition, a functional or cognitive impairment, or physical or mental deterioration due to aging which substantially diminishes the defendant's ability to care for themselves within the facility and from which the defendant is not expected to recover; (3) at least 65 years old, experiencing serious deterioration due to age, and has served at least 10 years or 75 percent of their sentence; (4) experiencing a change in family circumstances, namely the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse who now requires the defendant's care; or (5) is experiencing some other extraordinary and compelling reason as determined by the BOP. Although some courts disagree, this Court holds that Section 1B1.13 is not binding because it predates the First Step Act of 2018's amendments to Section 3582(c)(1)(A) which enabled defendants to bring motions for compassionate release on their own behalf. *United States v. Crandall*, No. 89-CR-21-CJW-MAR, 2020 WL 7080309, at *5 (N.D. Iowa Dec. 3, 2020). The Court recognizes, however, that Section 1B1.13 should still be considered a helpful guidepost in determining whether extraordinary and compelling reasons exist to release a defendant. *Id.*

4

# IV. DISCUSSION

## A. Exhaustion of Administrative Remedies

Defendant submitted requests for release to her warden on April 16, 2020, August 20, 2020, and August 26, 2020. (Doc. 196, at 11–15). The warden denied at least defendant's first request once on April 23, 2020, and then again on April 27, 2020. (*Id.*, at 13–14). In light of these facts, the Court finds defendant has fulfilled the exhaustion requirement of 3582(c)(1)(A) because 30 days have lapsed from the date the warden of her facility received her request. *See Burnside*, 467 F. Supp. 3d at 667.

## B. Extraordinary and Compelling Reason

Defendant argues that an extraordinary and compelling reason for release is present because (1) her health conditions place her at a substantially higher risk of severe outcomes from COVID-19 and (2) her minor daughter requires her care. (Doc. 203-1, at 5–10). The Court will address each basis in turn.

### 1. Health Conditions During the COVID-19 Pandemic

Defendant cites her body mass index ("BMI") of 45.5 and hypertension as placing her at a greater risk during the COVID-19 pandemic. (*Id.*, at 5–8). Currently, 10 inmates and 16 staff persons are positive for COVID-19 at Phoenix FCI, another 486 inmates and 46 staff have recovered, and one inmate has died.[2]

The COVID-19 pandemic can constitute an extraordinary and compelling reason for compassionate release if the defendant is at a substantially greater risk of severe outcomes from COVID-19 due to age or underlying health conditions. *See Burnside*, 467 F. Supp. 3d at 668 (compiling cases). The Centers for Disease Control and Prevention ("CDC") recognizes that hypertension is a potential, but not a known, risk

---

[2] *COVID-19*, BOP, https://www.bop.gov/coronavirus/.

factor relevant to COVID-19.[3]  The CDC recognizes that persons with a BMI in excess of 30 are at increased risk to COVID-19.  *Id.*  A person's risk to COVID-19 also increases with age.[4]  Eight out of ten deaths related to COVID-19 in the United States have been in adults older than 65.  *Id.*  Persons over age 85 are at "[t]he greatest risk for severe illness from COVID-19."  *Id.*

Defendant is 40 years' old.  (Doc. 112, at 2).  Thus, although the Court notes her age, she is not in or near being in a high-risk age group.

Based on her height of 5' 0'' and weight of 233, defendant's BMI is 45.5.  (Docs. 112, at 2; 203-2, at 39).[5]  The Court notes that defendant's weight has increased only slightly while incarcerated.  (Docs. 112, at 2; 203-2, at 39).  Because her BMI significantly exceeds the CDC's risk threshold, the Court affords this condition significant weight in its analysis.

Because hypertension is only noted as a potential risk factor by the CDC, the Court has generally only considered it if the defendant's hypertension is consistent and severe.  *See United States v. Clutts*, No. 18-CR-70-CJW-MAR, 2020 WL 6531915, at *6 (N.D. Iowa Nov. 5, 2020).  Here, defendant has long been diagnosed with hypertension (Doc. 112, at 10) and her records show that she is consistently in hypertension stage 2 despite

---

[3] *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (Dec. 29, 2020).

[4] *Older Adults*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (Dec. 13, 2020).

[5] *See also Calculate Your Body Mass Index*, National Heart, Lung, and Blood Institute, https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm.

6

her medication (Doc. 203-2, at 5, 7, 12, 23, 39).[6] Thus, the Court also affords this condition significant weight.

On balance, defendant has cited one health condition which is known to increase her risk (obesity) and one condition which may increase her risk (hypertension). Although defendant otherwise appears to be in good health and is frequently tested for COVID-19 (*Id.*, at 1, 10, 15, 17, 21, 22), the Court acknowledges that these two underlying health conditions increase her risk during the pandemic to some extent (*Id.*, at 31). Thus, the Court finds that defendant has presented an extraordinary and compelling reason for release, albeit by a small margin.

### 2. *Caretaking Responsibilities*

The compassionate release framework contemplates personal and extreme changes in familial circumstances. *See* USSG §1B1.13 cmt. 1(C) (describing changed familial circumstances as the death or incapacitation of a spouse or caregiver of a defendant's minor children); *see also United States v. Crandall*, No. 89-CR-21-CJW-MAR, 2020 WL 7080309, at *5 (N.D. Iowa Dec. 3, 2020) (holding that, although Section 1B1.13 is not binding, it remains a helpful guidepost in determining whether extraordinary and compelling reasons exist to release a defendant). *Id.* Thus, the Court may also consider whether some unforeseen and drastic change in defendant's familial circumstances warrants release.

Defendant asserts that her familial circumstances warrant release, specifically her responsibilities as a parent toward her youngest daughter, K.C.G. (Docs. 112, at 10; 203-1, at 9–10). K.C.G. is now in the care of her aunt, E.C. (Doc. 203-3). E.C. reports that K.C.G. is happier in her custody than she was when placed with defendant's

---

[6] *See also Understanding Blood Pressure Readings*, American Heart Association, https://www.heart.org/en/health-topics/high-blood-pressure/understanding-blood-pressure-readings.

cousin but is still experiencing significant mental health issues in part due to the absence of her mother. (*Id.*). E.C. notes that although therapy has helped K.C.G., her mental health issues persist. (*Id.*). Defendant worries that K.C.G.'s mental health issues will worsen and cause her to be placed in foster care. (Doc. 203-1, at 9–10).

The Court finds that these familial circumstances, although difficult, fall far short of warranting release. K.C.G. is in the stable care of her aunt. Although she is experiencing mental health issues, she has access to therapy which has helped her condition. Defendant's fears, although natural for a mother to have, are purely speculative. Simply put, there is much about defendant's familial situation that is sympathetic, but nothing about it that is so uniquely extraordinary and compelling that release is warranted. Thus, the Court rejects this argument as a basis for compassionate release.

In light of defendant's health conditions discussed above, however, the Court will proceed to the Section 3553(a) factors to determine whether release is warranted.

### C.    *Section 3553(a) Factors and Danger to Community*

Guideline Section 1B1.13(2) provides compassionate release is appropriate only when "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" Section 3582(c)(1)(A) requires a court to consider the factors set forth in Section 3553(a) before granting compassionate release. Section 3553(a) requires the Court to consider: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and provide rehabilitative opportunities and care to the defendant; (3) the kinds of sentences available; (4) the sentencing range as set by the USSG; (5) any pertinent policy by the United States Sentencing Commission; (6) the need to avoid

8

unwarranted sentencing disparities among similarly situated defendants; and (7) the need for restitution to any victims.

Defendant was arrested while attempting to deliver a large quantity of methamphetamine with her two minor children in the car. It is troubling that defendant now asks to be released in part to care for her daughter whom she involved in the instant offense. Drug trafficking is dangerous, violence is common, and firearms are tools of the drug trade. Defendant knowingly exposed her minor children to danger when she brought them along to a drug deal. Although defendant may not have known the exact amount of methamphetamine she was transporting, she undoubtedly was aware of its general size. Defendant's upbringing and minimal criminal history are both mitigating, as are her struggles with addiction to some extent. Not only did defendant evade the mandatory minimum sentence typically applicable here but the Court also gave her a bottom-of-the-range sentence in light of some of these mitigating factors.

While incarcerated, she has taken educational courses and began drug treatment but was unable to complete it due to the pandemic. (Doc. 203-5); *see also* (Doc. 204, at 15). Her summary also states that she "has received two high severity incident reports." (Doc. 203-5, at 1). It appears these reports stem from the same incident on June 28, 2020, when defendant was cited for destroying a window and assaulting another person without causing serious injury. (Doc. 204-5). These incidents are highly concerning.

On balance, the Court finds that the Section 3553(a) factors weigh against release. Defendant was afforded a fairly short sentence despite the fact that she transported a substantial quantity of methamphetamine with her two minor children in tow. Thus, although defendant has only a matter of months left of her term of incarceration, any reduction in her sentence is significant in light of its overall short length. Although defendant has attempted to complete drug treatment as required, her troubling history of addiction would be problematic for release. Her recent and violent incident reports in

prison also caution against her release. These considerations outweigh the marginal risks to her health. Defendant is only a Care Level 1 inmate. (Doc. 203-5, at 2). The record demonstrates that she receives adequate and frequent medical care in her facility. (Doc. 203-2). For these reasons, the Court concludes that the remainder of defendant's sentence is necessary to offer adequate deterrence, reflect the seriousness of her offense, protect the public, and provide just punishment.

The Court also notes, separately from its above analysis, that defendant was offered the COVID-19 vaccine earlier this month and refused it. (Doc. 204-4, at 10). The Court would deny defendant's motion absent this fact. If it were to consider it, however, defendant's refusal would substantially undermine her motion. Although she requests that the Court take immediate action to reduce her sentence and release her due to the threat of COVID-19, she herself was not willing to inoculate herself against that same disease. Although defendant has a right to refuse medical treatment, the Court finds that it would be inappropriate to reward her refusal to protect herself by granting her release. It would be paradoxical to endorse a system whereby a defendant could manufacture extraordinary and compelling circumstances for compassionate release by unreasonably refusing the health care afforded to them. Thus, this fact would further weigh against release if the Court factored it into its analysis here.

## V.    CONCLUSION

For these reasons, the Court **denies** defendant's motion for compassionate release. (Doc. 203). The Court also **denies** her pro se motion for the same reasons. (Doc. 196). Defendant must serve her term of incarceration as previously directed. (Doc. 168).

**IT IS SO ORDERED** this 25th day of January, 2021.

_____
C.J. Williams
United States District Judge
Northern District of Iowa